# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE EZCORP INC. CONSULTING   )
AGREEMENT DERIVATIVE   )    C.A. No. 9962-VCL
LITIGATION   )

## OPINION

Date Submitted: October 27, 2015
Date Decided: January 15, 2016

Seth. D. Rigrodsky, Brian D. Long, Gina M. Serra, Jeremy J. Reilly, RIGRODSKY & LONG, P.A., Wilmington, Delaware; Nicholas I. Porritt, Adam M. Apton, LEVI & KORSINSKY, LLP, Washington, District of Columbia; *Counsel for Plaintiff Lawrence Treppel.*

Edward P. Welch, Edward B. Micheletti, Cliff C. Gardner, Lauren N. Rosenello, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware; *Counsel for Defendants Phillip Ean Cohen, MS Pawn Corporation, MS Pawn Limited Partnership, and Madison Park, LLC.*

David C. McBride, Elena C. Norman, Nicholas J. Rohrer, Benjamin M. Potts, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; *Counsel for Defendant Thomas C. Roberts.*

A. Thompson Bayliss, John M. Seaman, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Randall W. Bodner, Peter L. Welsh, Jesse M. Boodoo, ROPES & GRAY LLP, Boston, Massachusetts; *Counsel for Defendants Joseph J. Beal, William C. Love, and John Farrell.*

Srinivas Raju, Sarah A. Clark, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Counsel for Nominal Defendant EZCORP, Inc.*

**LASTER, Vice Chancellor.**

The complaint in this action named as defendants Joseph J. Beal, William C. Love, and John Farrell. They were three outside directors of nominal defendant EZCORP, Inc. ("EZCORP" or the "Company") who, in varying combinations, approved transactions challenged in this litigation.

Beal, Love, and Farrell moved to dismiss the complaint, and the motion was fully briefed. Before it could be argued, the Delaware Supreme Court issued its decision in *In re Cornerstone Therapeutics Inc. Stockholder Litigation*, 115 A.3d 1173 (Del. 2015).

After *Conerstone*, plaintiff's counsel re-evaluated the strength of their allegations against Beal, Love, and Farrell. Recognizing that they had not pled a non-exculpated claim against them, they proposed a dismissal without prejudice.

Beal, Love, and Farrell rejected that idea. They sought a dismissal with prejudice that would bind all potential plaintiffs. As their counsel agreed at oral argument, they wanted a dismissal that would be binding "[a]s to the world." Unable to agree on a form of dismissal, the outside directors pressed on with their motion.

Rule 15(aaa) defines what should happen. It provides that when a plaintiff chooses to stand on his complaint and files an answering brief in opposition to a motion to dismiss, then any dismissal in a class or derivative action is with prejudice as to the named plaintiff, but without prejudice to other potential plaintiffs. Under an exception to the general rule, the court can grant a dismissal without prejudice for good cause shown. In this case, good cause does not exist for a without prejudice dismissal. The claims against the outside directors are dismissed with prejudice as to the named plaintiff only.

1

# I.    FACTUAL BACKGROUND

The relevant facts are few. They are drawn from the currently operative pleading, which is the Verified Amended Stockholder Derivative Complaint (the "Complaint").

## A.    The Company And The Services Agreements

EZCORP is a publicly traded Delaware corporation headquartered in Austin, Texas. Its controlling stockholder is Phillip Ean Cohen.

In 2004, EZCORP entered into a services agreement with defendant Madison Park, LLC, an entity affiliated with Cohen. The agreement called for EZCORP to pay Madison Park $100,000 per month for a period of three years. Beginning in September 2007, when the initial agreement expired, EZCORP and Madison Park entered into annual renewals. In 2008, the monthly fee increased to $150,000. In each of the ensuing five years, the monthly fee increased again: in 2009 to $200,000, in 2010 to $300,000, in 2011 to $400,000, in 2012 to $500,000, and in 2013 to $600,000. In 2014 it remained at $600,000. In return for these payments, Madison Park agreed to consult with EZCORP as needed about mergers, acquisitions, divestitures, strategic planning, corporate development, investor relations, and other matters.

A special committee of the board of directors approved the services agreements for 2007, 2008, and 2009. The board's audit committee approved the later agreements. When the audit committee approved the agreement with Madison Park for 2012 and 2013, its members included Love and Farrell. When the audit committee approved the agreement with Madison Park for 2014, its members were Beal, Love, and Farrell.

2

## B.    This Litigation

On July 9, 2014, plaintiff Lawrence Treppel sent EZCORP a demand for books and records pursuant to 8 *Del. C.* § 220. Treppel sought to examine the services agreements between EZCORP and Madison Park and related documents. EZCORP refused to provide any of the requested documentation, claiming that the demand failed to set forth a credible basis to infer any wrongdoing.

On July 28, 2014, Treppel filed this action. On September 23, 2014, he filed the Complaint. It contains four counts:

- Count I asserts a claim for breach of fiduciary duty against Love, Beal, Farrell, and other director defendants.

- Count II asserts a claim for waste of corporate assets against the same defendants as Count I.

- Count III asserts a claim against Cohen and two of his affiliates for aiding and abetting the directors in breaching their fiduciary duties.

- Count IV asserts a claim against Cohen and Madison Park for unjust enrichment.

## C.    The Motion To Dismiss

On October 13, 2014, the defendants filed *pro forma* motions to dismiss pursuant to Court of Chancery Rules 12(b)(6) and 23.1. On November 12, 2014, they filed their opening briefs. On January 9, 2015, Treppel filed his answering brief, and on February 6, 2015, the defendants filed their reply briefs. Vice Chancellor Parsons, to whom the case was then assigned, scheduled oral argument for July 7, 2015.

On May 14, 2015, the Delaware Supreme Court issued its decision in *Cornerstone*, which addressed what a plaintiff must plead against outside director defendants to overcome a motion to dismiss based on the existence of an exculpatory

3

charter provision in a setting where the transaction under challenge is governed by the entire fairness standard of review.

Before *Cornerstone*, the Delaware Supreme Court had referred to the effect of an exculpatory charter provision as being "in the nature of an affirmative defense." *Emerald P'rs v. Berlin (Emerald I)*, 726 A.2d 1215, 1223 (Del. 1999). The *Emerald I* decision and other opinions from the high court could be read to distinguish between the application of Section 102(b)(7) at the pleading stage in a case governed by the business judgment rule versus in a case governed by the entire fairness standard.[1] In *Cornerstone*, however, the high court squarely held that "[a] plaintiff seeking only monetary damages must plead non-exculpated claims against a director who is protected by an exculpatory charter provision to survive a motion to dismiss, regardless of the underlying standard of review

---

[1] *Compare Emerald I*, 726 A.2d at 1223 (holding that in a challenge to a transaction involving a controlling stockholder to which entire fairness applied, court could not apply Section 102(b)(7) on motion for summary judgment because factual conflicts required a trial to determine nature of the duty breached), *with Malpiede v. Townson*, 780 A.2d 1075, 1094-96 (Del. 2001) (holding that in a challenge to third-party, arms' length merger that was approved by a fully informed stockholder vote and to which the business judgment rule applied, the court could apply Section 102(b)(7) at the pleadings stage unless plaintiff pled facts sufficient to show that a majority of the board was not disinterested or independent), *with Emerald P'rs v. Berlin (Emerald II)*, 787 A.2d 85, 90, 92-94 (Del. 2001) (holding that in a challenge to a transaction with a majority stockholder to which entire fairness applied, court could not apply Section 102(b)(7) without first analyzing transaction under entire fairness standard to determine nature of the fiduciary breach and distinguishing *Malpiede* as a case involving the business judgment standard of review). *Cf. Corwin v. KKR Fin. Hldgs. LLC*, 125 A.3d 304, 308 (Del. 2015) (holding explicitly, as *Malpiede* indicated implicitly, that a fully informed stockholder vote lowers the standard of review from enhanced scrutiny to business judgment review). *See generally* 1 David A. Drexler et al., III, *Delaware Corporation Law and Practice*, § 6.02 [7] at 6-17 (2015).

for the board's conduct—be it *Revlon*, *Unocal*, the entire fairness standard, or the business judgment rule." *Cornerstone*, 115 A.3d at 1175-76 (footnotes omitted). So applied, the existence of an exculpatory provision operates more in the nature of an immunity, comparable to the extent to which sovereign immunity typically protects government employees from suit, rather than as an affirmative defense.

Treppel's counsel had named Beal, Love, and Farrel as defendants based on a more plaintiff-friendly understanding of the law, which the Delaware Supreme Court recognized in *Cornerstone* was at least an arguable reading of its earlier precedent. *See id.* at 1185. Treppel's Delaware counsel in fact represented the plaintiffs in *Cornerstone*, where they advanced their interpretation.

With *Cornerstone* having clarified matters, Treppel's counsel re-examined their pleading. Recognizing the paucity of factual allegations against defendants Beal, Love, and Farrell, they offered to stipulate to a dismissal of those defendants without prejudice pursuant to Court of Chancery Rule 41(a)(1). Treppel's counsel proposed a without-prejudice dismissal because, assuming they had the benefit of *Cornerstone* before filing the Complaint, they would not have named Beal, Love, and Farrell as defendants. In turn, they would not have faced the prospect of a with-prejudice dismissal and would have retained the freedom to name those individuals as defendants later.

Beal, Love, and Farrell rejected that proposal. They insisted that any dismissal should be with prejudice, not only as to Treppel but as to all other potential plaintiffs. As their counsel conceded at oral argument, Beal, Love, and Farrell wanted a dismissal with prejudice "[a]s to the world." Dkt. 72 at 31.

5

Unable to agree on a stipulated order, Beal, Love, and Farrell pressed forward with argument on their motion to dismiss. Treppel's counsel agreed that dismissal was warranted, but argued that good cause existed for it to be without prejudice.

Due to Vice Chancellor Parson's retirement, the case was re-assigned to me.

## II.    LEGAL ANALYSIS

Rule 41(a)(1) generally permits a plaintiff to dismiss a claim against a defendant unilaterally as long as the defendant has not yet answered or moved for summary judgment. It states:

> Subject to payment of costs and the provisions of Rule 23(e) and Rule 23.1 an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs . . . . However, no such dismissal pursuant to subpart (i) above shall be effective where the complaint is subject to a motion to dismiss and the plaintiff has chosen to file an answering brief rather than seeking to amend. . . . Unless otherwise stated in the notice of dismissal . . . , the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

Ct. Ch. R. 41(a)(1).

As indicated by the rule's introductory phrase, when the complaint asserts a derivative claim, a Rule 41(a)(1) dismissal is "[s]ubject to . . . the provisions of . . . Rule 23.1." Rule 23.1(c) generally requires judicial approval and notice to stockholders before any derivative action can be dismissed. At the same time, Rule 23.1(c) contemplates the ability to forego notice when the dismissal does not present any risk of a surreptitious

6

buyoff of the named plaintiff or its counsel and when the order will not foreclose other

plaintiffs from litigating the same claims. The pertinent part states:

> [A derivative] action shall not be dismissed or compromised without the approval of the Court, and notice by mail, publication or otherwise of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the Court directs; *except that if the dismissal is to be without prejudice or with prejudice to the plaintiff only, then such dismissal shall be ordered without notice thereof if there is a showing that no compensation in any form has passed directly or indirectly from any of the defendants to the plaintiff or plaintiff's attorney and that no promise to give any such compensation has been made.*

Ct. Ch. R. 23.1(c) (emphasis added).

Yet another rule, Rule 15(aaa), identifies circumstances when a court will dismiss

a complaint with prejudice, thereby limiting a plaintiff's ability to file *seriatim*

complaints. Under Rule 15(aaa),

> a party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed. In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances. Rules 41(a), 23(e) and 23.1 shall be construed so as to give effect to this subsection (aaa).

Ct. Ch. R. 15(aaa). The upshot of Rule 15(aaa) is that "[w]hen a court dismisses a

complaint after full briefing in the absence of a timely motion to amend, the dismissal

shall be with prejudice unless the plaintiff can show 'good cause [why] dismissal with

prejudice would not be just under all the circumstances.'" *E. Sussex Assocs. LLC v. W.*

*Sussex Assocs. LLC*, 2013 WL 2389868, at \*1 (Del. Ch. June 3, 2013) (alteration in original). The purpose of this rule is "to conserve litigants' and judicial resources by discouraging a party from briefing a dispositive motion before filing an amended complaint." *Id.*

When originally adopted in 2001, Rule 15(aaa) did not apply literally to a sequence in which the plaintiff filed an answering brief in opposition to a motion to dismiss, then sought to dismiss its complaint without prejudice pursuant to Rule 41(a)(1). This court nevertheless held that the principles underlying Rule 15(aaa) governed, such that the Rule 41(a)(1) dismissal would be with prejudice absent good cause shown. *Stern v. LF Capital P'rs, LLC,* 820 A.2d 1143, 1147 (Del. Ch. 2003). Effective February 1, 2006, Rule 15(aaa) was amended to provide that "Rule[] 41(a) . . . shall be construed so as to give effect to this subsection (aaa)," thereby codifying *Stern.* Rule 15(aaa) now literally applies to notices and motions for voluntary dismissal. *See E. Sussex,* 2013 WL 2389868, at \*1.

In this case, Beal, Love, and Farrell filed their opening brief in support of their motion to dismiss, Treppel filed a combined answering brief in opposition to their motion and similar motions filed by other defendants, and Beal, Love, and Farrell filed a reply brief. Treppel then proposed to dismiss his claims against Beal, Love, and Farrell.

Given this sequence, Rule 15(aaa) calls for a dismissal with prejudice as to Treppel only. The plain language of Rule 15(aaa) generates this result because the complaint was brought and filed derivatively and is governed by Rule 23.1. The parenthetical describing the effect of a dismissal states that "in the case of complaints

8

brought pursuant to Rules 23 or 23.1" the dismissal shall be "with prejudice to the named plaintiffs only."

## A. Rule 15(aaa) Does Not Contemplate A With-Prejudice Dismissal "As To The World."

Beal, Love, and Farrell reject the prospect of a dismissal that only would be with prejudice as to Treppel. They insist that they are "entitled to under Rule 15(aaa)" a dismissal with prejudice "[a]s to the world." Dkt. 72 at 31-32. The difference between a dismissal with prejudice and without prejudice is consequential. "In general, a dismissal with prejudice constitutes a final decree for *res judicata* purposes." *RBC Capital Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 643 (Del. 2014). By contrast, "the phrase 'without prejudice' will mean only that the otherwise final judgment does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action." *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006). A with-prejudice dismissal that applies only to Treppel permits other plaintiffs, including EZCORP and other stockholders, to litigate in the future against Beal, Love, and Farrell about the issues raised in the Complaint. Any future plaintiffs still would need to plead facts sufficient to state a claim, but they would not be barred at the gate by *res judicata*. By contrast, a with-prejudice dismissal "as to the world" would bar anyone else, including EZCORP and other stockholders, from litigating against Beal, Love, and Farrell, no matter what the future might reveal about their conduct.

The three directors base their claimed entitlement to a dismissal with prejudice "as to the world" on the absence of any reference in Rule 15(aaa)'s parenthetical to a

voluntary dismissal of the type contemplated here. Dkt. 72 at 31-33. To reiterate, the full sentence in Rule 15(aaa) states:

> In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances.

Ct. Ch. R. 15(aaa). As Beal, Love, and Farrell read it, the parenthetical identifies bases for dismissal, not the type of action filed. Thus, if the action were dismissed "pursuant to Rules 23 or 23.1," then they would agree that the dismissal would be "with prejudice to the named plaintiffs only." *Id.*; *see* Dkt. 72 at 35. But because Treppel is dismissing the action voluntarily, Beal, Love, and Farrell think the parenthetical does not apply.

Beal, Love, and Farrell misread Rule 15(aaa). The parenthetical does not refer to the basis for dismissal. It refers to the type of action filed. The parenthetical singles out complaints styled as class actions (Rule 23) or as derivative actions (Rule 23.1). It does so because they are representative actions where the plaintiff sues not only for itself but also for others. Rule 15(aaa) contemplates that a dismissal in those types of actions will be as to the named plaintiff only. Rule 15(aaa) also states that Rule 41(a) "shall be construed so as to give effect to this subsection (aaa)." Under the plain language of Rule 15(aaa), Treppel's dismissal is "with prejudice to the named plaintiffs only," subject to the court's ability to grant a dismissal without prejudice for good cause shown. This outcome matches up with Rule 23.1(c), which otherwise would require notice to stockholders before Treppel's complaint could be dismissed. *See* Ct. Ch. R. 23.1(c)

10

(requiring notice "except . . . if the dismissal is to be without prejudice or with prejudice as to the plaintiff only" and if no compensation has passed to the plaintiff or his counsel).

## B. The Substantive Law Of Derivative Actions Precludes A With-Prejudice Dismissal "As To The World."

Assuming for the sake of argument that Rule 15(aaa) did not provide for this outcome, the same result would follow as a matter of substantive Delaware law. Treppel sued derivatively to remedy harm suffered by EZCORP. But when a corporation suffers harm, the board of directors is the institutional actor legally empowered under Delaware law to determine what, if any, remedial action the corporation should take, including pursuing litigation against the individuals involved. *See* 8 *Del. C.* § 141(a). "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."[2] "Directors of Delaware corporations derive their managerial decision making power, which

---

[2] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984). In *Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000), the Delaware Supreme Court overruled seven precedents, including *Aronson*, to the extent those precedents reviewed a Rule 23.1 decision by the Court of Chancery under an abuse of discretion standard or otherwise suggested deferential appellate review. *See id.* at 253 & n.13 (overruling in part on this issue *Scattered Corp. v. Chi. Stock Exch.*, 701 A.2d 70, 72-73 (Del. 1997); *Grimes v. Donald*, 673 A.2d 1207, 1217 n.15 (Del. 1996); *Heineman v. Datapoint Corp.*, 611 A.2d 950, 952 (Del. 1992); *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991); *Grobow v. Perot*, 539 A.2d 180, 186 (Del. 1988); *Pogostin v. Rice*, 480 A.2d 619, 624-25 (Del. 1984); and *Aronson*, 471 A.2d at 814). The *Brehm* Court held that going forward, appellate review of a Rule 23.1 determination would be *de novo* and plenary. *Brehm*, 746 A.2d at 253-54. The seven partially overruled precedents otherwise remain good law. In this decision, I do not rely on any of them for the standard of appellate review. Although the technical rules of legal citation would require noting that each was reversed on other grounds by *Brehm*, I have chosen to omit the cumbersome subsequent history, which creates the misimpression that *Brehm* rejected core elements of the Delaware derivative action canon.

encompasses decisions whether to initiate, or refrain from entering, litigation, from 8 *Del. C.* § 141(a)." *Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981) (footnote omitted). Section 141(a) vests statutory authority in the board of directors to determine what action the corporation will take with its litigation assets, just as with other corporate assets. *See id.*

In a derivative suit, a stockholder plaintiff like Treppel seeks to displace the board's authority. *Aronson*, 473 A.2d at 811. As a matter of Delaware law, a stockholder whose litigation efforts are opposed by the corporation does not have authority to sue on behalf of the corporation until there has been a finding of demand excusal or wrongful refusal:

> Because directors are empowered to manage, or direct the management of, the business and affairs of the corporation, the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim *and* they have wrongfully refused to do so *or* where demand is excused because the directors are incapable of making an impartial decision regarding such litigation.

*Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993) (emphases added; citation omitted). "The right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand would be futile." *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988).[3]

---

[3] Delaware Court of Chancery decisions have long said the same thing. *See, e.g., Ainscow v. Sanitary Co. of Am.*, 180 A. 614, 615 (Del. Ch. 1935) (Wolcott, C.) ("[A] stockholder has no right to file a bill in the corporation's behalf unless he has first made

The derivative plaintiff's lack of authority to sue on behalf of the corporation until the denial of a Rule 23.1 motion likewise flows from the two-fold nature of the derivative suit. As the Delaware Supreme Court explained in *Aronson*, "[t]he nature of the [derivative] action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it." 473 A.2d at 811. Later Delaware Supreme Court decisions reaffirmed the two-fold nature of the derivative suit.[4] Nor was this a new concept. One of Delaware's greatest jurists, Chancellor Josiah Wolcott, wrote half a century before *Aronson* that

---

demand on the corporation that it bring the suit and the demand has been answered by a refusal, or unless the circumstances are such that because of the relation of the responsible officers of the corporation to the alleged wrongs, a demand would be obviously futile . . . ."); *accord Maldonado v. Flynn*, 413 A.2d 1251, 1262 (Del. Ch. 1980) ("The stockholder's individual right to bring the action does not ripen, however, until he has made a demand on the corporation which has been met with a refusal by the corporation to assert its cause of action or unless he can show a demand to be futile."), *rev'd on other grounds sub nom, Zapata*, 430 A.2d at 784 ("[W]here demand is properly excused, the stockholder does possess the ability to initiate the action on his corporation's behalf.").

[4] *See Schoon v. Smith*, 953 A.2d 196, 201-02 (Del. 2008) (tracing history of derivative action and explaining its dual nature); *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990) (quoting *Aronson* for the "two-fold" nature of the derivative action); *Sternberg v. O'Neil*, 550 A.2d 1105, 1124 n.41 (Del. 1988) ("The normal derivative suit was 'two suits in one: (1) The plaintiff brought a suit in equity against the corporation seeking an order against it; (2) to bring a suit for damages or other legal injury for damages or other relief against some third person who had caused legal injury to the corporation.'" (quoting Robert C. Clark, *Corporate Law* 639-40 (1986))); *Peat, Marwick*, 540 A.2d at 730 (quoting *Aronson* in describing the "two-fold" nature of the derivative action); *Zapata*, 430 A.2d at 784 (citing "the 'two phases' of a derivative suit, the stockholder's suit to compel the corporation to sue and the corporation's suit").

[t]he complainants' case, being asserted by them in their derivative right as stockholders, has a double aspect. Its nature is dual. It asserts as the principal cause of action a claim belonging to the corporation to have an accounting from the defendants and a decree against them for payment to the corporation of the sum found due on such accounting. In this aspect, the cause of action is the corporation's. It does not belong to the complainants. Inasmuch however as the corporation will not sue because of the domination over it by the alleged wrongdoers who are its directors, the complainants as stockholders have a right in equity to compel the assertion of the corporation's rights to redress. This is their individual right. A bill filed by stockholders in their derivative right therefore has two phases—one is the equivalent of a suit to compel the corporation to sue, and the other is the suit by the corporation, asserted by the stockholders in its behalf, against those liable to it. The former belongs to the complaining stockholders; the latter to the corporation.[5]

A Rule 23.1 motion addresses the first phase of the derivative action in which the stockholder sues individually to obtain authority to assert the corporation's claim.

Under these controlling Delaware precedents, until the derivative action passes the Rule 23.1 stage, the named plaintiff does not have authority to sue on behalf of the corporation or anyone else. The stockholder plaintiff is only suing in the plaintiff's own name to "compel the corporation to sue." *Aronson*, 473 A.2d at 811. The only plaintiff legitimately in the case at that point is the stockholder plaintiff.

Because of the substantive law that governs a derivative action, the named plaintiff is the only party who could be bound by a dismissal with prejudice entered

---

[5] *Cantor v. Sachs*, 162 A. 73, 76 (Del. Ch. 1932) (citations omitted); *accord Harff v. Kerkorian*, 324 A.2d 215, 218 (Del. Ch. 1974) ("The nature of the derivative suit is two-fold: first, it is the equivalent of a suit by the stockholders to compel the corporation to sue; and second, it is a suit by the corporation, asserted by the stockholders in its behalf, against those liable to it."), *aff'd in part, rev'd in part on other grounds*, 347 A.2d 133 (Del. 1975).

before the denial of a Rule 23.1 motion or before the board or a duly empowered committee permits the stockholder to sue. Here, the only plaintiff validly in the case, and the only plaintiff to whom the with-prejudice dismissal would apply, is Treppel.

The stage of the case differentiates a with-prejudice dismissal under Rule 15(aaa) from later, post-Rule 23.1 judgments in derivative actions that do bind the corporation and all of its stockholders.[6] A judgment in a stockholder derivative action certainly binds the corporation and its stockholders when the plaintiff has authority to assert the corporation's claims. Examples include when (i) the corporation has brought the case or taken it over through the special litigation committee process, (ii) the derivative plaintiff has survived a Rule 23.1 motion, thereby gained authority to sue, and obtained a decision

---

[6] For cases explaining the general rule, see, for example, *Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 269 (3d Cir. 1978) ("Nonparty shareholders are usually bound by a judgment in a derivative suit on the theory that the named plaintiff represented their interests in the case."); *Dana v. Morgan*, 232 F. 85, 89 (2d Cir. 1916) (explaining that a stockholder derivative "action is really the action of all the stockholders, as it is necessarily commenced in their behalf and for their benefit. And as in such suits the wrong to be redressed is the wrong done to the corporation and as the corporation is a necessary part to the suit, it inevitably follows that there can be but one adjudication on the rights of the corporation. And it is undoubted law that the judgment in the state court is an estoppel and a finality not only as to all matters actually litigated in the suit but also as to all matters which were not but might have been presented to the court and passed upon therein."); *Ratner v. Paramount Pictures, Inc.*, 6 F.R.D. 618, 619 (S.D.N.Y. 1942) ("A judgment in the stockholders' derivative action is res judicata both as to the corporation and as to all of its stockholders, including stockholders who were not parties to the original action in subsequent actions based upon the same subject matter."); *Parkoff v. Gen. Tel. & Elecs. Corp.*, 425 N.E.2d 820, 824 (N.Y. 1981) ("Because the claim asserted in a stockholder's derivative action is a claim belonging to and on behalf of the corporation, a judgment rendered in such an action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders.").

on summary judgment or at trial, or (iii) a court has approved a derivative action settlement and made the determinations required by Rule 23.1. But the general rule does not apply before the stockholder plaintiff has gained authority to sue on behalf of the corporation.

## C. Due Process Precludes A With-Prejudice Dismissal "As To The World."

Beyond the Delaware substantive law of derivative actions, there is even a more fundamental doctrine that prevents Beal, Love, and Farrell from obtaining a with-prejudice dismissal "as to the world": due process of law. A foundational principle of American law is that "[a] person who is not a party to an action is not bound by the judgment in that action." Restatement (Second) of Judgments § 62 cmt. a (1982) [hereinafter Judgments]. This "basic principle of law" is subject to three exceptions. *Id.* One applies "where a non-party has a *specific type of pre-existing legal relationship* with a named party, such as bailor and bailee, predecessor and successor or indemnitor and indemnitee." *Kohls v. Kenetech Corp.*, 791 A.2d 763, 769 (Del. Ch. 2000), *aff'd*, 794 A.2d 1160 (Del. 2002). "Being fellow stockholders is plainly not the type of legal relationship that fits [this] exception . . . . An individual stockholder is not, solely because of potentially aligned interests, presumed to act in the place of (and with the power to bind) the other stockholders." *Id.*

A second exception applies when "a person who is not a party to an action . . . is involved with it in a way that falls short of becoming a party but which justly should result in his being denied opportunity to relitigate the matters previously in issue." Judgments § 62 cmt. a. "Several kinds of conduct by a non-party are recognized as

16

having this effect. These include allowing the use of one's name as a party when the effect is to mislead an opposing litigant; assuming control of litigation being maintained by another; and agreeing to be bound by an adjudication between others." *Id.* (citations omitted). Concrete, case-specific actions by a stockholder plaintiff or its counsel might well trigger this exception, such as, for example, if the same counsel represented both stockholders or the plaintiffs otherwise collaborated. *Cf. Beiser v. PMC-Sierra, Inc.*, 2009 WL 483321, at *3 (Del. Ch. Feb. 26, 2009); *Cohen v. El Paso Corp.*, 2004 WL 2340046, at *2 (Del. Ch. Oct. 18, 2004). But the general scenario of parallel, overlapping, or *seriatim* efforts by unaffiliated stockholders to assert or prompt the assertion of corporate claims does not implicate this exception.

The third and most pertinent exception is a properly commenced and maintained representative action. *Kohls*, 791 A.2d at 769. Stockholder class and derivative actions qualify, but even here, the authority to represent others is not conferred automatically by filing a complaint. "A representative party must be granted . . . authority, either by the represented party itself (in accordance with agency principles) or, in the class action context, by the court." *Id.* It is "self-evident that if a litigant never seeks to and is never compelled to act in a representative capacity, the class of people that *theoretically could have been* represented by that litigant is in no way precluded from asserting their own claims in a subsequent proceeding."[7]

---

[7] *Id.* at 769-70; *see* Judgments § 41 (identifying categories of persons who can bind non-parties as including "[t]he representative of a class of persons similarly situated, *designated as such with the approval of the court*, of which the person is a member"

17

When a stockholder representative pursues claims on a class basis, authority is conferred by a class certification ruling.[8] When a stockholder representative pursues claims in a derivative action, authority can be conferred in two ways. First, the board of directors or a duly empowered committee can approve the litigation expressly or by failing to oppose it. *See Peat, Marwick*, 540 A.2d at 730. Second, and more commonly, a court can determine that the stockholder plaintiff has authority to proceed by denying a Rule 23.1 motion because the complaint adequately pleads either that demand should be excused as futile or that demand was made and wrongfully refused. Until authority is conferred, the representative plaintiff only represents himself.

The limitations that due process places on the scope of a judgment find support in more august authority than common law doctrine. They are embodied in the Due Process Clause of the United States Constitution. The United States Supreme Court has held that

---

(emphasis added)); *id.* § 59 cmt. c ("The stockholder's or member's derivative action is usually though not invariably in the form of a suit by some of the stockholders or members as representatives of all of them. Whether the judgment in such a representative suit is binding upon all stockholders or members is determined by the rules stated in §§ 41 and 42.").

[8] *See* Ct. Ch. R. 23; *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1349 (2013) ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified."); *Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) ("[W]hen defendants obtain summary judgment before the class has been properly certified or before notice has been sent, . . . [the summary judgment] decision binds only the named plaintiffs."); 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.12, at 63-64 (5th ed. 2013) ("[I]f a court rules on a dispositive motion prior to certification and the defendant prevails[,] . . . the resulting order would not bind putative absent class members since no class was certified, and they remained complete nonparties.").

18

to bind other litigants to an adjudication in a case where they were not parties "deprive[s] them of the due process of law guaranteed by the Fourteenth Amendment." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 (1996); *accord S. Cent. Bell Tel. Co. v. Ala.*, 526 U.S. 160, 168 (1999).

For present purposes, the most analogous decision is *Smith v. Bayer Corp.*, 564 U.S. 299, 131 S.Ct. 2368 (2011), where the United States Supreme Court applied this principle to a putative class action. The *Bayer* litigation began in 2001, when a different plaintiff—George McCollins—sued Bayer Corporation in West Virginia state court. His complaint asserted various state-law claims relating to Baycol, a drug sold by Bayer. McCollins sought to represent a class comprising all West Virginia residents who purchased Baycol. A month later, another West Virginia resident, Keith Smith, filed a similar action in a different county court. Neither knew about the other's suit. Bayer removed McCollins' case to federal court based on diversity jurisdiction, but Smith's case remained in state court for lack of complete diversity. Six years later, with both cases moving at roughly the same pace, the federal court denied class certification in McCollins' action. Bayer than moved to have the federal court enjoin the state court from certifying a class in Smith's action, arguing that "the proposed class in Smith's case was identical to the one the federal court had just rejected." *Id.* at 2374. The federal court issued the injunction, and the Court of Appeals for the Eighth Circuit affirmed.

The Supreme Court reversed, holding that "[n]either a proposed class action nor a rejected class action may bind nonparties." *Id.* at 2380. In reaching this conclusion, the Court rejected Bayer's argument that "Smith—an unnamed member of a proposed but

uncertified class—qualifies as a party to the McCollins litigation." *Id.* at 2379. The Court explained that this argument "ill-comports with any proper understanding of what a 'party' is," and that while an unnamed member of a *certified* class can be considered a party for limited purposes, no one would "advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before that class is certified.*" *Id.* (internal quotation omitted).

The Court found the non-binding nature of the district court's determination all the more clear because class certification was denied. *Id.* at 2379 ("Still less does [Bayer's] argument make sense *once certification is denied.*"). The Court held that "[t]he definition of the term 'party' can on no account be stretched so far as to cover a person . . . whom the plaintiff in a lawsuit was denied leave to represent." *Id.*

> If we know one thing about the McCollins suit, we know that it was *not* a class action. Indeed, the very ruling that Bayer argues ought to be given preclusive effect is the District Court's decision that a class could not properly be certified. So Bayer wants to bind Smith as a member of a class action (because it is only as such that a nonparty in Smith's situation can be bound) to a determination that there could not be a class action.

*Id.* at 2380. The Court held that a decision properly authorizing the plaintiff to represent a class was a precondition for binding unnamed class members. *Id.*

In reaching this conclusion, the Court rejected the defendant's policy-based arguments. Bayer contended that without a broad judgment that would bind all unnamed class members, multiple plaintiffs could file *seriatim* lawsuits, forcing the "serial relitigation of class certification." *Id.* at 2381. The Court responded that "[t]his form of argument flies in the face of the rule against nonparty preclusion. . . . [O]ur legal system

20

generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." *Id. See generally Taylor v. Sturgell*, 553 U.S. 880, 898-901 (2008) (rejecting on similar grounds the theory of preclusion by "virtual representation").

In my view, just as the Due Process Clause prevents a judgment from binding absent class members before a class has been certified, the Due Process Clause likewise prevents a judgment from binding the corporation or other stockholders in a derivative action until the action has survived a Rule 23.1 motion to dismiss, or the board of directors has given the plaintiff authority to proceed by declining to oppose the suit. *Cf. Parfi Hldg. AB v. Mirror Image Internet*, 954 A.2d 911, 940 (Del. Ch. 2008) (Strine, V.C.) ("Although it is too often overlooked, derivative suits are a form of representative action. Indeed, they should be seen for what they are, a form of class action."). In this case, a dismissal order that would be binding "as to the world" would parallel the anti-suit injunction that the district court issued in *Bayer*. Like the order in *Bayer*, it would purport to bind persons who are not parties to the suit and whose interests Treppel has never been given authority to represent. Under the logic of *Bayer*, the Due Process Clause forecloses a judgment in a derivative action that is entered before the stockholder plaintiff acquires authority to litigate on behalf of the corporation from binding anyone other than the named stockholder plaintiff, just as Rule 15(aaa) provides.

## D.    Treppel's Request For A Without-Prejudice Dismissal

For the reasons described in the previous sections, Beal, Love, and Farrell cannot obtain a with-prejudice dismissal "as to the world." Treppel takes the polar opposite

view, arguing that any dismissal should be without prejudice. To reiterate, Treppel posits that if his counsel had the benefit of *Cornerstone*, he would not have sued Beal, Love, and Farrell. He then would not be in the position of facing a dismissal with prejudice as to himself under Rule 15(aaa) that would limit his ability to name Beal, Love, and Farrell if discovery uncovers a basis for suit.

In my view, Treppel has not established good cause for a without-prejudice dismissal. A similar situation arose in *Quadrant Structured Products Co., Ltd. v. Vertin*, 2014 WL 5465535 (Del. Ch. Oct. 28, 2014). That decision granted a motion to dismiss in part, dismissing derivative claims for breach of fiduciary duty against certain directors due to the absence of allegations that would have called into question the defendants' loyalty or good faith. Under Rule 15(aaa), the dismissal was with prejudice as to the named plaintiff. The plaintiff moved for reargument, positing that as discovery went forward on other claims, it might yield evidence that would permit the plaintiff to plead a viable claim against the directors. The plaintiff claimed that this possibility supported a without-prejudice dismissal, because only then could the plaintiff name the directors later. I disagreed, noting that the dismissal was an interlocutory ruling. *Id.* at *5. Consequently, subject to the law of the case doctrine, the dismissal could be "revisited should future developments, including evidence generated by the discovery process, provide a compelling reason for doing so." *Id.*; *accord Siegman v. Columbia Pictures Entm't, Inc.*, 1993 WL 10969, at *3 (Del. Ch. Jan. 15, 1993). This meant there was no prejudice from a with-prejudice dismissal, and good cause for a without-prejudice dismissal did not exist.

The same reasoning applies here. As in *Quadrant*, the with-prejudice dismissal of Beal, Love, and Farrell can be revisited if a "compelling reason to do so appears." *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept. 23, 1994) (Allen, C.). That possibility alleviates any need to grant a without-prejudice dismissal now, and good cause does not exist for departing from the default rule established by Rule 15(aaa).

## III.  CONCLUSION

Beal, Love, and Farrell's motion to dismiss is granted. The dismissal is with prejudice only as to Treppel.