# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE WAL-MART STORES, INC. DELAWARE DERIVATIVE LITIGATION | CONSOLIDATED C.A. No. 7455-CB |

## SUPPLEMENTAL OPINION

Date Decided: July 25, 2017

Stuart M. Grant, Michael J. Barry, and Nathan A. Cook, GRANT & EISENHOFER P.A., Wilmington, Delaware; Ned Weinberger, LABATON SUCHAROW LLP, Wilmington, Delaware; Daniel Girard, Dena Sharp, Jordan Elias, and Adam Polk, GIRARD GIBBS LLP, San Francisco, California; Thomas A. Dubbs, Louis Gottlieb, and Jeffrey A. Dubbin, LABATON SUCHAROW LLP, New York, New York; Frederic S. Fox, Hae Sung Nam, Donald R. Hall, and Jeffrey P. Campisi, KAPLAN FOX & KILSHEIMER LLP, New York, New York; David C. Frederick, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, District of Columbia; Samuel Issacharoff, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., New York, New York; *Co-Lead Counsel for the Co-Lead Plaintiffs.*

Donald J. Wolfe, Jr., Stephen C. Norman, and Tyler J. Leavengood, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Theodore J. Boutrous, Jr. and Alexander K. Mircheff, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, California; Mark A. Perry, GIBSON, DUNN & CRUTCHER LLP, Washington, District of Columbia; *Attorneys for Appearing Defendants.*

**BOUCHARD, C.**

This supplemental opinion is submitted in response to the Delaware Supreme Court's order of remand (the "Remand Order") asking this Court to address the following question:

> In a situation where dismissal by the federal court in Arkansas of a stockholder plaintiff's derivative action for failure to plead demand futility is held by the Delaware Court of Chancery to preclude subsequent stockholders from pursuing derivative litigation, have the subsequent stockholders' Due Process rights been violated? *See Smith v. Bayer Corp.*, 564 U.S. 299 (2011).[1]

The first sentence of the Remand Order states: "This is a troubling case."[2] I agree. The trouble arises from a tension in competing policies. On the one hand, Delaware courts have long encouraged stockholders contemplating derivative actions to use the "tools at hand"—in particular to obtain corporate books and records under Section 220 of the Delaware General Corporation Law—*before* filing derivative litigation so that the issue of demand futility may be decided on a well-developed factual record.[3] On the other hand, as a matter of comity and in the interest of preserving judicial resources, public policy discourages duplicative litigation. The tension between these policies in representative stockholder litigation involving multiple forums is heightened by the "fast-filer" phenomenon, where

---

[1] *Cal. State Teachers' Ret. Sys. v. Alvarez*, 2017 WL 239364, at *8 (Del. Jan. 18, 2017) (ORDER).

[2] *Id.* at *1.

[3] *See Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 120 (Del. 2006); *Rales v. Blasband*, 634 A.2d 927, 934-35 n.10 (Del. 1993).

1

counsel handling cases on a contingent basis have a significant financial incentive to race to the courthouse in an effort to beat out their competition and seize control of a case, often at the expense of undertaking adequate due diligence.

Courts that have considered whether a stockholder plaintiff in a second derivative action is barred from re-litigating the issue of demand futility based on the failure of a plaintiff to demonstrate demand futility in a first derivative action—in particular two federal circuit courts—have found that due process is satisfied if the plaintiff in the first action adequately represented other stockholders of the corporation who were not parties to the first action. In doing so, those courts have applied principles from the Restatement (Second) of Judgments (the "Restatement"). This is the approach I followed in concluding in my memorandum opinion dated May 16, 2016 that the earlier Arkansas decision precluded re-litigation of the demand futility issue in Delaware ("*Wal-Mart I*").[4] In other words, my consideration of due process in *Wal-Mart I* was embedded in the determination of adequacy of representation.

Based on the approach used in *Wal-Mart I* and the federal circuit court decisions it follows, the answer to the question posed in the Remand Order would be "no" unless the representative plaintiff's management of the first derivative action

---

[4] *In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*, 2016 WL 2908344 (Del. Ch. May 13, 2016).

2

was "so grossly deficient as to be apparent to the opposing party"[5] or failed to satisfy one of the Restatement's other criteria for determining adequacy of representation.[6] But that does not mean that a better approach is not worthy of consideration.

In *In re EZCORP, Inc. Consulting Agreement Derivative Litigation*, Vice Chancellor Laster stated in *dictum* that, both as a matter of Delaware law and as a matter of due process, a judgment cannot bind "the corporation or other stockholders in a derivative action until the action has survived a Rule 23.1 motion to dismiss, or the board of directors has given the plaintiff authority to proceed by declining to oppose the suit."[7] *EZCORP* thus endorses a bright-line rule drawing a distinction between the pre- and post-demand futility phases of derivative litigation. In doing so, the Court analogized derivative actions to class actions, relying on the United States Supreme Court's adoption of a similar bright-line rule in *Smith v. Bayer*, which distinguished between pre- and post-certification in the class action context, although *Bayer* explicitly was not decided on due process grounds.[8]

---

[5] Restatement §42 cmt. f.

[6] For example, inadequacy of representation also may be found under the Restatement if the interests of the representative and the represented person are not aligned or if there is collusion between the representative plaintiff and the defendant. *See Wal-Mart I*, 2016 WL 2908344, at *18 & n.103.

[7] *In re EZCORP Inc. Consulting Agreement Deriv. Litig.*, 130 A.3d 934, 948 (Del. Ch. 2016).

[8] *Id.* at 946-49; *Smith v. Bayer Corp.*, 564 U.S. 299, 308 n.7 (2011).

Considering afresh the question presented in the Remand Order, I recommend that the Supreme Court adopt the rule proposed in *EZCORP*. Although no court has done so to date, and although the Supreme Court previously declined to embrace such a rule in the context of considering the question of privity in derivative litigation,[9] it is my opinion for the reasons explained below that this rule will better safeguard the due process rights of stockholder plaintiffs and should go a long way to addressing fast-filer problems currently inherent in multi-forum derivative litigation.

## I.   BACKGROUND

A detailed description of the factual background giving rise to this action is set forth in *Wal-Mart I*.[10] This supplemental opinion assumes general familiarity with *Wal-Mart I* and sets forth below only certain facts relevant to addressing the issue on remand.

### A.   The Arkansas Litigation

In April 2012, *The New York Times* published an article detailing an alleged bribery scheme at Wal-Mart de Mexico, a subsidiary of Wal-Mart Stores, Inc.

---

[9] *Pyott v. La. Mun. Police Empls.' Ret. Sys.*, 74 A.3d 612, 616-18 (Del. 2013) ("*Pyott II*") (rejecting "the 'fast-filer' irrebuttable presumption of inadequacy" and holding that the Court of Chancery should have applied California law and found two successive stockholder plaintiffs to be in privity even though the earlier action was dismissed for failure to adequately plead demand futility), *rev'g La. Mun. Police Empls.' Ret. Sys. v. Pyott*, 46 A.3d 313, 330 (Del. Ch. 2012) ("*Pyott I*").

[10] *Wal-Mart I*, 2016 WL 2908344, at *2-7.

("Wal-Mart"), and the related cover-up. Shortly after the article was published, Wal-Mart stockholders filed multiple derivative suits in Delaware and Arkansas.

The United States District Court for the Western District of Arkansas consolidated the federal actions in Arkansas, and the Arkansas plaintiffs filed a consolidated complaint on May 31, 2012. The Arkansas complaint asserted claims against certain of Wal-Mart's current and former directors and officers for breach of fiduciary duty and for violations of Sections 14(a) and 29(b) of the Securities Exchange Act.[11] On March 31, 2015, the district court granted defendants' motion to dismiss the Arkansas complaint under Federal Rule of Civil Procedure 23.1 for failing to adequately allege demand futility (the "Arkansas Decision").[12] On July 22, 2016, the Eighth Circuit affirmed the Arkansas Decision.[13]

## B. The Delaware Litigation

Around the same time the Arkansas litigation was beginning, seven derivative actions were filed in this Court. On June 6, 2012, plaintiff Indiana Electrical Workers Pension Trust Fund IBEW sent Wal-Mart a demand for books and records under 8 *Del. C.* § 220. On August 13, 2012, after Wal-Mart produced certain

---

[11] *See* Consolidated Verified Shareholder Derivative Complaint, *In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.*, C.A. No. 4:12-CV-4041-SOH (W.D. Ark. May 31, 2012).

[12] *In re Wal-Mart Stores, Inc. S'holder Deriv. Litig.*, 2015 WL 1470184, at *1 (W.D. Ark. Mar. 31, 2015) (ORDER).

[13] *Cottrell v. Duke*, 829 F.3d 983 (8th Cir. 2016).

documents, IBEW filed a Section 220 complaint alleging deficiencies in Wal-Mart's document production.[14]  On September 5, 2012, the Court of Chancery consolidated the seven derivative actions, appointed co-lead plaintiffs and co-lead counsel, and ordered plaintiffs to file a consolidated amended complaint after completion of the Section 220 action.[15]

After a trial on the papers, an appeal to the Delaware Supreme Court,[16] and a subsequent motion for contempt,[17] the Section 220 action eventually reached a final resolution on May 7, 2015.[18]  In the meantime, on May 1, 2015, about one month after the district court's dismissal of the Arkansas complaint, the Delaware plaintiffs filed the Verified Consolidated Amended Stockholder Derivative Complaint in this action, asserting a single claim against certain of Wal-Mart's current and former directors and officers for breach of fiduciary duty.

On June 1, 2015, defendants in the Delaware action moved to dismiss, arguing that the Arkansas Decision collaterally estopped plaintiffs from alleging demand

---

[14] Verified Complaint, *Ind. Elec. Workers Pension Trust Fund IBEW v. Wal-Mart Stores, Inc.*, C.A. No. 7779-CS (Del. Ch. Aug. 13, 2012).

[15] *In re Wal-Mart Stores, Inc. Del. Deriv. Litig.*, C.A. No. 7455-CS (Del. Ch. Sept. 5, 2012) (ORDER).

[16] *See Wal-Mart Stores, Inc. v. Ind. Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 126 (Del. 2014).

[17] *See Ind. Elec. Workers Pension Trust Fund IBEW v. Wal-Mart Stores, Inc.*, C.A. No. 7779-CB (Del. Ch. May 7, 2015) (TRANSCRIPT).

[18] *Ind. Elec. Workers Pension Trust Fund IBEW v. Wal-Mart Stores, Inc.*, 2015 WL 2150668 (Del. Ch. May 7, 2015) (ORDER).

futility, and that even if they were not collaterally estopped, plaintiffs had failed to adequately plead demand futility under Court of Chancery Rule 23.1.

I granted defendants' motion to dismiss on May 13, 2016, finding that the Arkansas Decision precluded the Delaware plaintiffs from re-litigating the issue of demand futility.[19]  Specifically, I held that "[s]ubject to Constitutional standards of due process, Arkansas law governs the question of issue preclusion in this case."[20] Under Arkansas law, issue preclusion applies when the following requirements are satisfied:

> (1) the issue sought to be precluded must be the same as the issue in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment.  In addition, the parties to be precluded must have been parties in the prior litigation or been in privity with those parties.  Finally, the precluded party must have been adequately represented in the previous litigation.[21]

Although Arkansas courts have not addressed issue preclusion in the context of stockholder derivative suits, which involves unique issues of "privity" and "adequate

---

[19] *Wal-Mart I*, 2016 WL 2908344, at *1.

[20] *Id.  See Alvarez*, 2017 WL 239364, at *2 ("The parties agree that the Chancellor was correct that, in determining the preclusive effect of the Arkansas federal court's dismissal, the Court of Chancery must look to federal common law, which, in turn, looks to the law of the rendering state (Arkansas) in which the federal court exercises diversity jurisdiction.").

[21] *Wal-Mart I*, 2016 WL 2908344, at *9 (citing *Riverdale Dev. Co., LLC v. Ruffin Bldg. Sys., Inc.*, 146 S.W.3d 852, 855 (Ark. 2004); *Morgan v. Turner*, 368 S.W.3d 888, 895 (Ark.

7

representation," I concluded, based on the clear weight of authority from other jurisdictions and guidance from the Restatement, that an Arkansas court likely would find the test for issue preclusion satisfied in this case.

In reaching my conclusion on the "privity" issue, I looked to "decisions from courts in other jurisdictions, the Restatement, and principles of public policy."[22] I noted that "[a]pplying the privity requirement to derivative actions involving two different stockholder plaintiffs raises the question whether the required privity is between the two stockholders, or between each stockholder and the corporation."[23] After reviewing an extensive body of case law from other jurisdictions, I found that:

> The vast majority of other jurisdictions that have decided the issue have concluded that privity exists between different stockholder plaintiffs who file separate derivative actions. The common theme in the opinions where privity has been found is that the corporation is the real party in interest in both the first derivative action and the subsequent suit. Viewed in this fashion, the first stockholder plaintiff does not represent the second stockholder plaintiff. Instead, both plaintiffs sue on behalf of the corporation and are essentially interchangeable.[24]

I also found that "the Restatement is ambiguous on the privity question in the derivative context,"[25] and that "public policy arguments exist on both sides of the

---

2010); *Ark. Dep't of Human Servs. v. Dearman*, 842 S.W.2d 449, 452 (Ark. Ct. App. 1992) (en banc)).

[22] *Wal-Mart I*, 2016 WL 2908344, at *13.

[23] *Id.* at *12.

[24] *Id.* at *13.

[25] *Id.* at *15.

privity question," but concerns about fast-filers "may be balanced by requiring that a derivative plaintiff be an adequate representative in order for a judgment to have a preclusive effect on subsequent actions."[26]  As a result, I determined that Arkansas courts likely would find the privity requirement satisfied.

In the last part of my issue preclusion analysis, I considered whether the Arkansas plaintiffs were adequate representatives, and in doing so, addressed the issue of due process that is embedded in the adequate representation requirement.[27] More specifically, as explained in the opinion, I looked, as other courts have done, to the Restatement for an analytical framework to determine compliance with due process "because Constitutional principles of due process are embedded in the pertinent provisions of the Restatement."[28]  Applying Section 42 of the Restatement, I concluded that the Arkansas plaintiffs were adequate representatives because their interests were not misaligned, and because their representation was not "grossly deficient," which is a key standard for determining inadequacy under the Restatement:

> The failure of a representative to invoke all possible legal theories or to develop all possible resources of proof does not make his representation legally ineffective, any more than such circumstances overcome the binding effect of a judgment on a party himself. . . . Where the representative's management of the litigation is *so grossly deficient as*

---

[26] *Id.* at *17.

[27] *See id.* at *18 & n.101.

[28] *See id.* at *18 n.99 (collecting authorities).

***to be apparent to the opposing party***, it likewise creates no justifiable reliance interest in the adjudication on the part of the opposing party. Tactical mistakes or negligence on the part of the representative are not as such sufficient to render the judgment vulnerable.[29]

In assessing whether the Arkansas plaintiffs' representation was grossly deficient, I relied on guidance from the Delaware Supreme Court in *Pyott v. Louisiana Municipal Police Employees' Retirement System* ("*Pyott II*"), which rejected a presumption of inadequacy for stockholders who fail to pursue books and records before filing derivative actions.[30] In this case, as in *Pyott II*, there was no basis on which to conclude that the Arkansas plaintiffs were inadequate representatives absent such a presumption.[31] For these reasons, I determined that a court in Arkansas would accord preclusive effect to the Arkansas Decision and, impliedly, that the Delaware plaintiffs' constitutional right to due process had not been violated.

---

[29] Restatement § 42 cmt. f (emphasis added); *see Wal-Mart I*, 2016 WL 2908344, at \*19-21.

[30] *See Pyott II*, 74 A.3d at 618 ("We reject the 'fast-filer' irrebuttable presumption of inadequacy. . . . Absent the presumption, there was no basis on which to conclude that the California plaintiffs were inadequate").

[31] *See Wal-Mart I*, 2016 WL 2908344, at \*19-21.

## C. The Remand Order

Plaintiffs appealed from *Wal-Mart I*. On January 18, 2017, the Delaware Supreme Court issued the Remand Order, asking this Court to address the following question:

> In a situation where dismissal by the federal court in Arkansas of a stockholder plaintiff's derivative action for failure to plead demand futility is held by the Delaware Court of Chancery to preclude subsequent stockholders from pursuing derivative litigation, have the subsequent stockholders' Due Process rights been violated? *See Smith v. Bayer Corp.*, 564 U.S. 299 (2011).[32]

Following remand, the Court received supplemental briefing from the parties.

## II. ANALYSIS

### A. Nonparty Preclusion in General

In *Richards v. Jefferson County, Alabama*, the United States Supreme Court stated that:

> State courts are generally free to develop their own rules for protecting against the relitigation of common issues or the piecemeal resolution of disputes. We have long held, however, that extreme applications of the doctrine of res judicata may be inconsistent with a federal right that is "fundamental in character."[33]

---

[32] *Alvarez*, 2017 WL 239364, at *8.

[33] *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 (1996) (internal citations omitted).

As I read the Remand Order, the Delaware Supreme Court appears to agree with the issue preclusion analysis set forth in *Wal-Mart I* as a matter of Arkansas state law,[34] which follows the approach most jurisdictions have taken. Thus, frankly stated, the issue presented on remand is whether the predominant approach on issue preclusion in the derivative action context constitutes such an "extreme application[] of the doctrine of res judicata" as to affront due process.

In 2008, in *Taylor v. Sturgell*, the United States Supreme Court struck down, on due process grounds, a "virtual representation" theory that was purportedly based on some Supreme Court decisions "recognizing that a nonparty may be bound by a judgment if she was adequately represented by a party to the earlier suit."[35] The Court began its analysis by citing the general rule stated in *Hansberry v. Lee* that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of

---

[34] *See Alvarez*, 2017 WL 239364, at *3 ("Although we reserve judgment until our final ruing after remand, we presently have no disagreement with the Court of Chancery's analysis of Arkansas law (which largely looks to the Restatement (Second) of Judgments)—particularly as it relates to the questions of whether the issue to be precluded was actually litigated and the adequacy of representation."); *id.* at *5 ("As a matter of Arkansas state law on the privity issue, we are presently satisfied with the state of the record and do not perceive any error.").

[35] *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008).

process."[36]  The Court then delineated six categories of recognized exceptions to the general rule against nonparty preclusion:[37]

> First, a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement.

> \* \* \* \* \*

> Second, nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment.

> \* \* \* \* \*

> Third, . . . in certain limited circumstances, a nonparty may be bound by a judgment *because she was adequately represented by someone with the same interests who was a party to the suit*.  Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries.

> \* \* \* \* \*

> Fourth, a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered.

> \* \* \* \* \*

---

[36] *Id.* at 893 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).

[37] The Supreme Court avoided using the term "privity" in *Sturgell* to prevent confusion because "privity," which originally referred to the "substantive legal relationships justifying preclusion" (the second exception identified in *Sturgell*), "has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." *Id.* at 894 n.8.  Case law also suggests that it might be difficult to draw a clear line between "privity" and "adequate representation." *See, e.g.*, *In re Sonus Networks, Inc., S'holder Deriv. Litig.*, 499 F.3d 47, 64 (1st Cir. 2007) (referring to the "adequate representation" requirement as a "caveat" for the privity finding).

Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy.

*  *  *  *  *

Sixth, in certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process.[38]

In the lower court opinion in *Sturgell*, the D.C. Circuit purported to ground its virtual representation doctrine in the third exception that, "in some circumstances, a person may be bound by a judgment if she was adequately represented by a party to the proceeding yielding that judgment."[39] The Supreme Court, however, found that the D.C. Circuit had misapprehended the constitutional standard of "adequate representation," which required, at a minimum, "either special procedures to protect the nonparties' interests or an understanding by the concerned parties that the first suit was brought in a representative capacity."[40]

The *Sturgell* Court's focus on the adequacy of representation in its due process analysis of the application of the third exception suggests that the "adequate representation" requirement provides the core constitutional check on when a nonparty may be bound by a judgment against someone with the same interests who was a party in a prior suit. In addition, although not many cases have addressed the

---

[38] *Sturgell*, 553 U.S. at 893-95 (internal citations and quotations omitted) (emphasis added).
[39] *Id.* at 896.
[40] *Id.* at 897, 900.

issue of due process in the context of precluding relitigation of demand futility in stockholder derivative actions, those that have done so—in particular two federal circuit courts—also focused their due process inquiries on the adequacy of representation.

**B.      Nonparty Preclusion in Derivative Actions:  *Arduini* and *Sonus***

In 2014, in *Arduini v. Hart*, the Ninth Circuit affirmed a district court's dismissal of a derivative action filed by plaintiff Lawrence Arduini.[41]  Arduini had filed his action in federal court in Nevada against International Gaming Technology and its board of directors, alleging that certain officers of the company made intentionally misleading statements about the company's financial prospects.[42] Before Arduini filed his lawsuit, however, the same court had dismissed another derivative action (the *Fosbre* action) asserting substantially similar claims for failure to make a demand on the company's board or to sufficiently allege demand futility.[43] Applying the doctrine of issue preclusion, the district court held that Arduini was barred from relitigating demand futility based on the dismissal of the *Fosbre* action. In an opinion post-dating *Sturgell*, the Ninth Circuit affirmed.[44]

---

[41] *Arduini v. Hart*, 774 F.3d 622, 625 (9th Cir. 2014).

[42] *Id*.

[43] *Id.*

[44] *Id.*

15

Arduini contended on appeal that issue preclusion should not apply because, among other things, "he is not in privity with the *Fosbre* plaintiffs for the purposes of issue preclusion," and "the equities and due process weigh against applying issue preclusion here."[45]  On the privity issue, Arduini advanced the same argument as the plaintiffs in *Wal-Mart I*, namely, that "there is no privity because shareholders who fail to establish their representative capacity can only act on their own behalf and are not in privity with other shareholders."[46]  Significantly, the Ninth Circuit followed the majority rule from other jurisdictions to find privity, despite its stated concern about due process rights:

> The fact that Arduini was not a party to the *Fosbre* case does potentially raise concerns.  The Nevada Supreme Court has stated that issue preclusion can only be used against a party whose due process rights have been met by virtue of that party having been a party or in privity with a party in the prior litigation.[47]

Thus, in holding the way it did, the Ninth Circuit implicitly rejected the notion that finding privity between Arduini and his fellow stockholders violated due process even though the earlier stockholder plaintiffs failed to establish demand futility.

---

[45] *Id.* at 629.

[46] *Id.* at 633 (citing *Pyott I*, 46 A.3d at 330).

[47] *Arduini*, 774 F.3d at 633.

16

The Ninth Circuit also expressly considered due process in connection with its discussion of adequate representation.[48] It noted that "precluding the suit of a litigant who has not been adequately represented in the earlier suit would raise serious due process concerns."[49] Although the Court left "for another day the precise contours of what conduct constitutes inadequate representation," the authorities it cited were consistent with the "grossly deficient" standard in the Restatement. In particular, the Court cited *In re Sonus Networks, Inc., Shareholder Derivative Litigation*, a First Circuit decision (discussed below) that adopted the "grossly deficient" standard,[50] and it looked to Section 42(1) of the Restatement, which, as noted above, utilizes a "grossly deficient" standard for determining adequacy of representation.[51] Relying on these authorities, the Ninth Circuit concluded that the earlier stockholder plaintiffs were adequate representatives.

---

[48] *See id.* at 634-38. It appears that "adequate representation" is not an element of issue preclusion under Nevada state law. *See id.* at 629 ("In order for an issue decided in another case to have preclusive effect, (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated."). Thus, as I read the decision, the *Arduini* Court's discussion of adequate representation was driven by constitutional concerns.

[49] *Id.* at 635 (internal citations omitted).

[50] *Id.*; *see Sonus*, 499 F.3d at 66, 71.

[51] *Arduini*, 774 F.3d at 635.

17

Relying on *Sturgell*, furthermore, Arduini raised a due process argument that he should have been given notice of the dismissal of the earlier case. The Ninth Circuit rejected the argument, reasoning that "*Taylor v. Sturgell* is inapposite" because, unlike in *Sturgell*, "[h]ere, both Arduini and the *Fosbre* plaintiffs were acting in a representative capacity as shareholders on behalf of [International Gaming Technology]. ***Because the Fosbre plaintiffs adequately represented the shareholders*** and issue preclusion applies, there is no need for Arduini to receive personal notice of the *Fosbre* court's decisions."[52]

In sum, the *Arduini* Court was aware of the Supreme Court's decision in *Sturgell*, explicitly considered due process in its rulings on adequacy of representation and the failure to provide notice of the *Fosbre* dismissal, and implicitly considered due process in its ruling on privity. In the end, however, the Court did not find any constitutional obstacle in barring Arduini from relitigating demand futility.

In 2007, the First Circuit reached a similar conclusion in *Sonus*, where it affirmed a district court's dismissal of a stockholder derivative action on the basis that dismissal of an earlier derivative action in Massachusetts state court precluded plaintiffs in the federal court from relitigating demand futility.[53] In rejecting

---

[52] *Id.* at 638 (emphasis added).

[53] *Sonus*, 499 F.3d at 53.

plaintiffs' argument that privity did not exist because "the state court judgment did not adjudicate the corporation's rights, but only the question of whether the state court plaintiffs should be permitted to bring suit on behalf of the corporation," the First Circuit stated that: "plaintiffs' argument could have some force if the question in the state court had concerned some issue peculiar to the state court plaintiffs *or the adequacy of their representation*, but it did not."[54]  The Court further commented that "[p]recluding the suit of a litigant who has not been adequately represented in the earlier suit would raise serious due process concerns" and went on to adopt the "grossly deficient" standard under the Restatement to determine adequacy of representation.[55]

Thus, similar to *Arduini*, the *Sonus* Court focused its due process inquiry on the adequacy of representation in the first derivative action.[56]  This is the logic underlying *Wal-Mart I* as well.  In other words, ensuring compliance with due

---

[54] *Id.* at 64 (emphasis added).  Although *Sonus* pre-dated *Sturgell*, the First Circuit noted that the "structural fact about derivative litigation" (*i.e.*, that "the corporation is bound by the results of the suit in subsequent litigation, even if different shareholders prosecute the suits") "makes irrelevant questions of 'virtual representation,' that is, the representation by a party of a nonparty outside the context of a class action."  *Id.* at 64 & n.10.

[55] *See id.* at 65, 66, 71.

[56] In *Pyott II*, although "adequate representation" was not one of the five factors identified for issue preclusion under California law, *see Pyott II*, 74 A.3d at 617, the Delaware Supreme Court nevertheless addressed the issue, citing Justice Ginsburg's partial concurrence and dissent in *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 395-96 (1996), for the proposition that "final judgments can be attacked collaterally on due process grounds for failure to satisfy the adequate representation requirement."  *Id.* at 618 & n.21.

process was embedded in my analysis of whether the Arkansas plaintiffs were adequate representatives, which turned on my application of principles from the Restatement, primarily the "grossly deficient" standard that the *Arduini* and *Sonus* Courts also employed.[57]

## C. A Different Approach to Non-Party Preclusion in Derivative Actions: *EZCORP*

Last year, Vice Chancellor Laster advocated for a different approach for addressing non-party preclusion in derivative actions than the *Arduini* and *Sonus* Courts. In *EZCORP*, a plaintiff filed a derivative complaint against three outside directors of EZCORP, Inc. After the defendants' motion to dismiss was fully briefed but before it was argued, the Delaware Supreme Court issued an intervening decision that led the plaintiff to re-evaluate the strength of his allegations and to propose a voluntary dismissal without prejudice. The defendants, however, sought a dismissal with prejudice "as to the world."[58] Applying Court of Chancery Rule 15(aaa), the Court ruled that the complaint should be dismissed with prejudice but only as to the named plaintiff.[59]

---

[57] *Wal-Mart I*, 2016 WL 2908344, at *17-21.

[58] *EZCORP*, 130 A.3d at 940.

[59] *Id.* at 938.

The *EZCORP* Court then went on to hold, in *dicta*, that both as a matter of Delaware law[60] and as a matter of due process, a judgment cannot bind "the corporation or other stockholders in a derivative action until the action has survived a Rule 23.1 motion to dismiss, or the board of directors has given the plaintiff authority to proceed by declining to oppose the suit."[61] In other words, the *EZCORP* Court proposed a bright-line rule drawing a distinction between the pre- and post-demand futility phases of derivative litigation. In so concluding, the Court analogized stockholder derivative actions to class actions, relying on the United State Supreme Court's 2011 decision in the class action context in *Smith v. Bayer*.[62]

In *Bayer*, a federal district court enjoined a state court from considering a plaintiff's motion for class certification because the district court previously had denied a similar certification motion in a related case that was brought by a different plaintiff against the same defendant (Bayer) alleging similar claims.[63] After the Eighth Circuit affirmed the decision, the precluded plaintiff appealed to the United States Supreme Court. On appeal, Bayer argued that preclusion was proper because the plaintiff qualified as a party to the prior litigation, and in the alternative, because

---

[60] *Id.* at 943-46. I note that Delaware law is unsettled on this issue. *See Pyott II*, 74 A.3d at 618 ("Although the Court of Chancery is divided on the privity issue as a matter of Delaware law, we cannot address the merits of that issue in this case.").

[61] *EZCORP*, 130 A.3d at 948.

[62] *Id.* at 946-49.

[63] *Bayer*, 564 U.S. at 302.

21

the plaintiff fell under the class action exception to the rule against nonparty preclusion.[64]

The Supreme Court swiftly rejected the first argument, holding that the "definition of the term 'party' can on no account be stretched so far as to cover a person like Smith, whom the plaintiff in a lawsuit was denied leave to represent."[65] It also rejected the alternative argument based on the class action exception, reasoning that: "If we know one thing about the McCollins suit, we know that it was *not* a class action. Indeed, the very ruling that Bayer argues ought to be given preclusive effect is the District Court's decision that a class could not properly be certified."[66]

The Supreme Court further noted that Bayer's position was essentially a reincarnation of the "virtual representation" theory rejected in *Sturgell*, which was based on "identity of interests and some kind of relationship between parties and nonparties."[67] As the *Sturgell* Court held, such a theory would "recognize, in effect, a common-law kind of class action. . . . shorn of the procedural protections prescribed in *Hansberry*, *Richards*, and Rule 23."[68]

---

[64] *See id.* at 313.

[65] *Id.*

[66] *Id.* at 314 (emphasis in original).

[67] *Id.* at 315 (citing *Sturgell*, 553 U.S. at 901).

[68] *Sturgell*, 553 U.S. at 901.

The *EZCORP* Court reasoned that before a stockholder acquires authority to litigate on behalf of a corporation, either by obtaining approval from the corporation, or by surviving a Rule 23.1 motion to dismiss, she is in a similar position as a purported class representative for an uncertified class. Thus, the Court concluded that, "[u]nder the logic of *Bayer*, the Due Process Clause forecloses a judgment in a derivative action that is entered before the stockholder plaintiff acquires authority to litigate on behalf of the corporation from binding anyone other than the named stockholder plaintiff."[69]

## D. Nonparty Preclusion in Derivative Actions: Re-examining the Law

Although *Arduini*, *Sonus*, and most other cases from various jurisdictions have come to similar conclusions on issue preclusion in the demand futility context, albeit typically in the context of considering the issue of privity,[70] I respectfully suggest that the Supreme Court should consider a different approach and adopt the one suggested in *EZCORP*. I base this recommendation on (1) the similarities between class actions and derivative actions, (2) some of the realities of derivative litigation, and (3) public policy considerations.

---

[69] *EZCORP*, 130 A.3d at 949.

[70] *See Wal-Mart I*, 2016 WL 2908344, at *13 n.69 (collecting authorities).

### 1. Similarities between Class Actions and Derivative Actions

Defendants advance two major arguments to distinguish *Bayer* and *EZCORP*. First, defendants argue that *Bayer* did not establish any constitutional principles because the *Bayer* Court expressly based its decision "on the Anti-Injunction Act and the principles of issue preclusion," and did not consider petitioner's argument on due process.[71] Although the *Bayer* Court did not specifically address due process, its discussion of nonparty preclusion, which heavily relied upon *Sturgell*, has obvious constitutional overtones. As discussed below, moreover, the importance of *Bayer* is not so much in its holding, but in its logic, which, if applied to the derivative action context, would have due process implications under the framework set forth in *Sturgell*.

Second, defendants argue that "*EZcorp* rested on a false equivalence between class and derivative actions" and that "[c]lass and derivative actions are not the same—they arise from different substantive laws and are implemented through different procedural rules."[72] To my mind, however, there are significant similarities between class and derivative actions.

In *Parfi Holding AB v. Mirror Image Internet*, then-Vice Chancellor Strine stated that: "Although it is too often overlooked, derivative suits are a form of

---

[71] *Bayer*, 564 U.S. at 308 n.7. *See* Appearing Defs.' Suppl. Br. on Remand 16-17.

[72] *See* Appearing Defs.' Suppl. Br. on Remand 19-26.

24

representative action.  Indeed, they should be seen for what they are, a form of class action."[73]  Not only do class actions and derivative actions have apparent similarities, the rules that govern their respective operations in federal courts—Federal Rules of Civil Procedure 23 and 23.1—share a common ancestry:  derivative actions in federal courts were governed by Rule 23 until 1966, when Rule 23.1 was adopted.[74]

Federal Rules 23 and 23.1 also share similar texts and structures.  For example, Rule 23(a) lays out the prerequisites for bringing a class action, which include numerosity, commonality, typicality, and adequacy.[75]  By comparison, Federal Rule 23.1(a) states that a derivative action may only be maintained if the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."[76]

---

[73] *Parfi Hldg. AB v. Mirror Image Internet*, 954 A.2d 911, 940 (Del. Ch. 2008) (Strine, V.C.).

[74] *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Practice and Procedure* § 1753, at 42-43 (3d ed. 2005) ("The provisions for representative actions were completely re-written and augmented in 1966.  Drastically altered provisions for the conduct of ordinary class actions are to be found in Rule 23, a new Rule 23.1 was adopted, replacing original Rule 23(b), to deal with derivative actions by stockholders."); *see also Snyder v. Harris*, 394 U.S. 332, 351 n.13 (1969) ("A 'true' class action could also be maintained to enforce a right 'secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it.'  Stockholders' derivative actions were the most significant type of suit within this group. They are now separately dealt with under Rule 23.1 in addition.").

[75] Fed. R. Civ. P. 23(a)(1)-(4).  In addition to satisfying the prerequisites in Rule 23(a), a class action must fall under one of the sub-categories in Rule 23(b).  Fed. R. Civ. P. 23(b).

[76] Fed. R. Civ. P. 23.1(a).

It is understandable that Rule 23.1(a) only requires "adequacy" and not the other three elements set out in Rule 23(a). By definition, a derivative action satisfies the "commonality" and "typicality" requirements, and given the identity of issues presented regardless of which stockholder brings the action, the "numerosity" requirement is irrelevant in the derivative context.

Other similarities between class actions and derivative actions under the federal rules can be found in the procedural protections afforded to the unnamed class members or stockholders. Rule 23(e) and Rule 23.1(c) both require court approval and appropriate notice in cases of settlement, voluntary dismissal, or compromise.[77] Rule 23(d) gives a trial court extensive power to ensure "the fair and efficient conduct" of a class action, including the power to issue orders that "determine the course of proceedings" and require "appropriate notice to some or all class members."[78] Similarly, the Advisory Committee Notes accompanying Rule 23.1 state that "[t]he court has inherent power to provide for the conduct of the

---

[77] Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise: (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."); Fed. R. Civ. P. 23.1(c) ("A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.").

[78] Fed. R. Civ. P. 23(d) & Advisory Committee Notes; *see also* 7B Wright, Miller & Kane, *supra* note 74, § 1791.

proceedings in a derivative action, including the power to determine the course of the proceedings and require that any appropriate notice be given to shareholders or members."[79]

There also is significant appeal in the analogy advanced in *EZCORP*, which focused on the similarities between a stockholder who is denied authority to sue on the corporation's behalf and a purported class representative who is denied his bid to represent the proposed class.[80] Both federal and Delaware courts have long recognized the dual nature of derivative litigation. For example, in *Ross v. Bernhard*, the United States Supreme Court observed "the dual nature of the stockholder's action: first, the plaintiff's right to sue on behalf of the corporation and, second, the merits of the corporation claim itself."[81] Similarly, in *Aronson v. Lewis*, the Delaware Supreme Court held that: "The nature of the [derivative] action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation

---

[79] Fed. R. Civ. P. 23.1 Advisory Committee Notes (1966).

[80] *See EZCORP*, 130 A.3d at 947.

[81] *Ross v. Bernhard*, 396 U.S. 531, 534-35 (1970); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (internal citations and quotations omitted) ("Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate suit on behalf of his corporation in disregard of the directors' wishes.").

to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it."[82]

As noted in *Wal-Mart I*, "[t]he common theme in the opinions" that have concluded that privity exists between different stockholder plaintiffs who file separate derivative actions "is that the corporation is the real party in interest in both the first derivative action and the subsequent suit."[83] That the corporation is the real party in interest, however, does not answer who has the authority to represent the corporation. When a court denies a stockholder the authority to sue on behalf of the corporation by granting a Rule 23.1 motion to dismiss, the purported derivative action is no more a representative action than the proposed class action in *Bayer* that was denied certification. Thus, a strong case can be made that a derivative action that has not survived a Rule 23.1 motion to dismiss should not fall under the representative action exception in *Sturgell*.[84]

---

[82] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). *See also EZCORP*, 130 A.3d at 943-44 (discussing the dual nature of derivative actions as a matter of Delaware law).

[83] *Wal-Mart I*, 2016 WL 2908344, at *13.

[84] In the Remand Order, the Supreme Court commented that "there is much force in the suggestion that the Delaware Plaintiffs should have sought to intervene in the Arkansas court to protect their interests—notwithstanding the fact that they had not yet obtained the documents they were seeking" in the Section 220 action. *Alvarez*, 2017 WL 239364, at *4. It should be noted, however, that the United States Supreme Court held in *Richards* that "[t]he general rule is that the law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger." *Richards*, 517 U.S. at 800 n.5 (internal citations and quotations omitted).

### 2. "Adequate Representation" in Derivative Litigation Practice

The need for a more rigorous preclusion rule in the derivative action context is heightened by the disparity between class and derivative actions in terms of how adequacy of representation is assessed in practice. Both Federal Rule 23 and Rule 23.1 require the proposed class or stockholder representative to be "adequate," and there are some similarities in the standard of adequacy under the two rules.[85] But in the class action context, the purported class representative has to affirmatively demonstrate his adequacy in order to obtain certification.[86] In a derivative action, by comparison, the burden is on the defendant to show that the plaintiff is an inadequate representative.[87]

Class actions also frequently engender competition at the front-end in the appointment of class counsel where the Court considers, among other things, the

---

[85] *See* 7C Wright, Miller & Kane, *supra* note 74, § 1833 at 147 (recognizing that the new Rule 23.1 "does not represent a change in substance" and that "[m]any of the factors that are considered when determining adequacy of representation in a class action under Rule 23 also apply in the context of derivative suits.").

[86] *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal citations and quotations omitted) ("a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must . . . be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).").

[87] *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592 n.15 (holding that under Federal Rule of Civil Procedure 23.1, the "burden is on the defendants to obtain a finding of inadequate representation"). *See also* 7C Wright, Miller & Kane, *supra* note 74, § 1834 at 159.

quality of the pleadings and the vigorousness of plaintiff's counsel.[88] Such competition is less common, at least in my experience, in derivative litigation, where plaintiff's counsel invariably have the option to file suit in a second forum and begin a race to the courthouse rather than to compete for leadership. Once multi-forum derivative litigation is underway, or even just anticipated, defendants often have an incentive not to challenge adequacy in an initial derivative action (*e.g.*, if the plaintiff's demand futility allegations appear weak) in the hope of obtaining a favorable determination on demand futility to bar re-litigation of the issue in a later proceeding against a more formidable adversary, *i.e.*, one who has undertaken additional due diligence and filed a more factually-developed pleading.[89]

In the Arkansas Decision, the district court judge did not discuss the Arkansas plaintiffs' adequacy.[90] The same was true in *Sonus*, where "the adequacy of the plaintiffs' representation was not litigated . . . in either [the state or the federal]

---

[88] *See Hirt v. U.S. Timberlands Serv. Co., LLC*, 2002 WL 1558342, at *2 (Del. Ch. July 3, 2002). *See also Moore v. Tangipadoa Parish School Bd.*, 298 F. Supp. 288, 294 (E.D. La. 1969) ("When more than one member of a class seeks to represent the class, the court must determine which applicant's interests are most typical of the interests of the class as a whole and which group will most fairly and adequately protect the interests of the class they represent."); 7A Wright, Miller & Kane, *supra* note 74, § 1765 at 320-21.

[89] This is not to say that a stockholder plaintiff's adequacy is never challenged in a derivative litigation. *See, e.g.*, *Parfi*, 954 A.2d at 942 (finding the plaintiffs to be inadequate representatives because they knowingly misled the court about a material issue); *Youngman v. Tahmoush*, 457 A.2d 376 (Del. Ch. 1983); *Katz v. Plant Indus., Inc.*, 1981 WL 15148 (Del. Ch. Oct. 27, 1981).

[90] *See generally* Arkansas Decision, 2015 WL 1470184.

action."[91]  As a practical matter, the first time a court may evaluate the adequacy of a named plaintiff's representation in a derivative action is when it applies the issue preclusion test in a subsequent case.  What is lost in this back-end form of adequacy review is the ability for courts to compare the qualities of competing representatives and to choose the best representative for the corporation and stockholders up-front, on a clean slate.

In short, under the current state of the law, the moment a stockholder files a derivative action, he is deemed in most jurisdictions to be in privity with all the other stockholders of the corporation that he purports to represent.  This "automatic privity" rule, together with an adequacy review undertaken at the back end under a "grossly deficient" standard that sets a relatively high bar for challenging the adequacy of one's representation, strikes a balance between preventing duplicative litigation and protecting due process rights that is far less favorable to stockholder plaintiffs in derivative litigation than it is to unnamed members in class actions.

### 3.    Public Policy

Competing public policies exist on both sides of the debate concerning current issue preclusion law in the demand futility context.  On one hand, the current legal regime better serves judicial efficiency and conserves public resources by preventing

---

[91] *Sonus*, 499 F.3d at 65.

duplicative litigation concerning demand futility.[92]  On the other hand, the approach

suggested in *EZCORP* should go a long way to addressing the "fast-filer" problem

and ensuring better protection of due process rights for stockholder plaintiffs.

In balancing similar competing policies, the United States Supreme Court's

observations in *Sturgell* and *Bayer* are instructive.  In *Sturgell*, the Federal Aviation

Administration argued that in public law cases, "the number of plaintiffs with

standing is potentially limitless," thus the virtual representation theory is necessary

to combat the threat of repetitive lawsuits.[93]  The Supreme Court was unconvinced.

It reasoned that:

> First, *stare decisis* will allow courts swiftly to dispose of repetitive suits
> brought in the same circuit. Second, even when *stare decisis* is not
> dispositive, "the human tendency not to waste money will deter the
> bringing of suits based on claims or issues that have already been
> adversely determined against others."  This intuition seems to be borne
> out by experience: The FAA has not called our attention to any
> instances of abusive FOIA suits in the Circuits that reject the virtual
> representation theory respondents advocate here.[94]

Similarly, in *Bayer*, Bayer Corp. argued that the Supreme Court's decision not

to bind unnamed class members in an uncertified class would allow repetitive

---

[92] Defendants argue that "the defendants in a derivative suit—the company and its directors and officers—also have due process rights, including a right to avoid serial and duplicative litigation."  Appearing Defs.' Suppl. Br. on Remand 26.  But I could discern no support for such a "due process right" in either of the two cases the defendants cited for this proposition, without providing any textual explanation.

[93] *Sturgell*, 553 U.S. at 903.

[94] *Id.* at 903-04.

litigation to try to certify the same class simply by changing named plaintiffs. The Court responded: "But principles of *stare decisis* and comity among courts generally suffice to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs. The right approach does not lie in binding nonparties to a judgment."[95]

The same reasoning applies with equal force to derivative actions. Although different stockholders theoretically would be able to file *seriatim* lawsuits litigating demand futility under the *EZCORP* rule, principles of *stare decisis* and comity are likely sufficient to allow courts to swiftly dispose of truly repetitive actions. The experience of this Court suggests that when one stockholder fails to establish demand futility, rarely does another stockholder file a substantially similar complaint simply to try again. What can and does happen is that a second stockholder plaintiff will file a more refined complaint with more particularized allegations or more tailored legal theories after doing additional homework, such as obtaining corporate books and records through a Section 220 proceeding.[96] In these cases, the second court presumably would be understandably cautious about following earlier rulings in cases brought by less prepared stockholders.

---

[95] *Bayer*, 564 U.S. at 317.

[96] *E.g.*, *Pyott I*, 46 A.3d 313; *Wal-Mart I*, 2016 WL 2908344.

In the pre-demand futility stage of a derivative action, furthermore, the plaintiff is essentially litigating against his own company over the right to sue. Thus, unlike the plaintiffs in *Sturgell* or *Bayer*, who ostensibly had little economic incentive to conserve the resources of the defendants, plaintiffs in derivative actions have more incentive to bring truly meritorious cases on behalf of the company, especially if a similar prior attempt already has failed.

## III.  CONCLUSION

For the foregoing reasons, having carefully considered the question in the Remand Order from a fresh perspective and with an open mind, I recommend that the Supreme Court adopt the rule proposed in *EZCORP*. If the Court agrees with this recommendation, the case will need to be remanded again for me to decide the issue of demand futility based on the allegations in plaintiffs' complaint. If the Court disagrees, I respectfully submit that *Wal-Mart I* correctly dismissed plaintiffs' complaint consistent with prevailing authority and should be affirmed.[97]

---

[97] In their supplemental brief on remand, plaintiffs argue that issue preclusion also should not apply because the Arkansas Decision was not based on factual findings on the merits. Co-lead Pls.' Resp. to Certified Question on Remand 21-25. Plaintiffs never raised this argument previously in this litigation, and thus waived it. *See* Del. S. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").